Mychal THOMPSON, et al., Petitioners,

v.

The FIRST NATIONAL BANK OF ST. PAUL, Respondent.

No. C2-84-1109.

Court of Appeals of Minnesota.

Jan. 15, 1985.

Review Denied March 21, 1985.

John R. Dorgan, Minneapolis, for petitioners.

Robert S. Brill, Minneapolis, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

Mychal Thompson appeals denial of his motion to dismiss for lack of personal jurisdiction, an action against him to recover sums loaned to Mychal Thompson Basketball Camps, Inc. We affirm and remand.

## FACTS

Appellant Mychal Thompson, an Oregon resident, is a professional basketball player with the Portland Trailblazers. He attended college and played basketball at the University of Minnesota but has not lived continuously in Minnesota since 1978.

In 1979 he agreed to allow Paul Presthus, a Minnesota resident, to establish a Mychal Thompson Basketball Camp in the Twin Cities. Presthus created Mychal Thompson Basketball Camp, Inc. to manage the camp. Thompson was president of the corporation, but worked at the camp only during the summers of 1980 and 1981. He also agreed to permit the use of his name in camp promotion and advertising.

The First National Bank of St. Paul loaned money to the corporation. The bank alleges that Thompson and Presthus met with bank officials in Minnesota in connection with the loan.

The bank also alleges that on December 26, 1979, Thompson individually signed a $20,000 guarantee of indebtedness for the camp, in favor of the bank. The bank further alleges that on July 31, 1981, Thompson signed a $10,000 promissory note on behalf of the camp and individually endorsed the note. Thompson denies ever meeting with bank officials or signing or endorsing any note. When the corporation defaulted on the loans, the bank sued Thompson.

## ISSUE

Did the trial court err in holding that Thompson had sufficient contacts with the state to permit Minnesota courts to exercise personal jurisdiction over him?

## DISCUSSION

First National alleges that Mychal Thompson had sufficient contacts with the state of Minnesota to authorize the exercise of personal jurisdiction over him. Minnesota interprets its long arm statute, Minn.Stat. § 543.19 (1982), to extend personal jurisdiction in its courts to the limits of the due process clause of the fourteenth amendment. *Mid-West Medical, Inc. v. Kremmling Medical-Surgical Associates,* 352 N.W.2d 59, 60 (Minn.Ct.App.1984) (citing *Toro Co. v. Ballas Liquidating Co.,* 572 F.2d 1267, 1269 (8th Cir.1978)).

Due process requires sufficient minimum contacts between the nonresident defendant and the forum state so that the exercise of jurisdiction complies with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the due process clause. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). Instead, defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court there. *Id.* at 297, 100 S.Ct. at 567.

To determine jurisdiction over nonresidents, Minnesota uses the five part test developed in *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir.1965). The test investigates: (1) the quantity of contacts; (2) the nature and quality of contacts; (3) the source and connection of those contacts to the cause of action; (4) the interest of the forum state; and (5) the convenience of the parties.

■ Nonpurposeful and nondeliberate behavior does not invoke jurisdiction *even where there was a form of contact with the forum.* *West American Insurance Co. v. Westin, Inc.,* 337 N.W.2d 676, 680 (Minn.1983). The court did not grant jurisdiction where an out-of-state lessee of three airplanes was not an active or aggressive party in creating the first lease transaction and took delivery of aircraft outside Minnesota. *Dent-Air, Inc. v. Beech Mountain Air Service, Inc.,* 332 N.W.2d 904 (Minn.1983). Neither did a four-year agreement for the sale of 6,000 railroad car parts involving numerous shipments to Minnesota constitute sufficient contacts to confer jurisdiction. *Scullin Steel Co. v. National Railway Utilization Corp.,* 676 F.2d 309 (8th Cir.1982). *See Janssen v. Johnson,* 358 N.W.2d 117 (Minn. Ct.App.1984) (Jurisdiction not granted over a borderline liquor vendor.).

■ Here, the facts strongly support granting jurisdiction. The basketball camp was built on Thompson's reputation. Thompson allowed his name to be used to solicit young basketball players to come to the summer basketball camps in Minnesota. He allowed his name to be used in the corporate name of the camp, the Mychal Thompson Basketball Camps, Inc. Finally, he worked at the camps in both the summers of 1980 and 1981. In addition, Thompson personally endorsed the notes. Minn.Stat. §§ 336.3–402 (1980) states: "Unless the instrument clearly indicates that a signature is made in some other capacity it is an endorsement." *See G. Sommers & Co. v. Tintah Co-operative Mercantile Co.,* 155 Minn. 107, 192 N.W. 492 (1923). Thompson in no way indicated that the signature was anything other than a personal endorsement.

Certainly, Thompson purposefully availed himself of the privilege of conducting activities in Minnesota, as required by *World-Wide Volkswagen.* Considering the *Aftanase* factors, the quantity of contacts was great. Thompson actually lived in Minnesota two summers to work and promote his camp. The nature and quality of the contacts were substantial and related to business promotion and employment. The source of those contacts is directly related to the cause of action, recovery of bank funds used for the camp. Here, the court properly denied Thompson's motion to dismiss, for there are sufficient contacts to confer jurisdiction in Minnesota Courts.

The bank made a motion for summary judgment which has not yet been heard pending this appeal.

### DECISION

We affirm the decision of the trial court and remand.