NFD, INC., Respondent,

v.

STRATFORD LEASING COMPANY, Defendant and Third–Party Plaintiff, Appellant.

UNITED LEASING INC., Defendant and Third–Party Plaintiff,

v.

BALBOA HOLDING COMPANY, Third–Party Defendant.

No. C9–88–1469.

Court of Appeals of Minnesota.

Dec. 20, 1988.

Review Granted Feb. 10, 1989.

See also Minn.App., 427 N.W.2d 757.

Steven C. Opheim, Dudley & Smith, P.A., St. Paul, for respondent.

Denise D. Reilly, Lindquist & Vennum, Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and SHORT and STONE,* JJ.

## OPINION

SHORT, Judge.

Appellant Stratford Leasing Company appeals from the trial court's order deny-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ing its motion to dismiss respondent's claim for lack of personal jurisdiction. We granted discretionary review and find no personal jurisdiction over appellant in this state. We reverse.

## FACTS

Appellant Stratford Leasing Company (Stratford) is an Illinois corporation with its principal place of business in Northbrook, Illinois. Respondent NFD, Inc. (NFD), is an Ohio corporation with its principal place of business in Braham, Minnesota. NFD is a manufacturer of agricultural equipment. United Leasing, Inc. (United) is a Minnesota corporation with its principal place of business in Golden Valley, Minnesota.

In October, 1987, Gordon W. Cell, president of NFD, met with John P. Tomann of United to discuss financing agricultural equipment NFD had purchased from Cities Advanced Machinery Company. According to Cell, Tomann claimed to be an agent for and representative acting on behalf of Stratford. At the meeting Cell conditionally executed a lease agreement.

Tomann submitted the lease application to Stratford's Milwaukee, Wisconsin office. Included with the lease application were financial statements and other information about NFD and Balboa Holding Company (Balboa), NFD's parent corporation. Because NFD had just emerged from bankruptcy, Stratford required that Balboa guarantee the lease. Stratford's Milwaukee office forwarded the lease application and other information to Stratford's corporate headquarters in Illinois. Burton Schwartz, president of Stratford, assumed the responsibility for negotiating the lease and contacted Martin Liebus, the Chief Financial Officer of Balboa, to consummate the lease transaction. Both Martin Liebus and Balboa were located in California.

The guarantee terms of the lease were negotiated during a series of telephone calls between Schwartz in Illinois and Liebus in California. Stratford and Balboa's negotiations resulted in the agreement that Balboa would guarantee NFD's performance on the lease and NFD would pay in advance the first and last four rental payments.

Stratford prepared the lease documentation in Illinois and sent the lease to United for NFD's signature. At the same time, Stratford sent Balboa the necessary papers so that Balboa could guarantee the lease. Tomann traveled to NFD's headquarters and had NFD complete the lease agreement. Upon signing the lease, Cell gave Tomann a check for $13,316.90 payable to Stratford as advance payment for the lease. Cell also signed equipment schedules, a UCC–1 form, a certificate relating to corporate resolutions, an insurance statement, and a guaranteed purchase option, all of which became part of the lease agreement upon execution. All of the lease and supporting documents were executed on forms supplied by Stratford. Most of these documents contained Stratford's Illinois logo and address.

Soon after NFD mailed Stratford the signed lease and documents, Balboa refused to sign the guarantee papers for the lease. When Stratford in turn refused to perform any of the terms of the lease NFD demanded return of the $13,316.90. Stratford refused to return the money and NFD brought this suit.

## ISSUE

Did Stratford's conduct provide sufficient minimum contacts with Minnesota to permit this state's exercise of personal jurisdiction over it?

## ANALYSIS

The exercise of personal jurisdiction over Stratford is proper only if it complies with both the Minnesota long-arm statute, Minn. Stat. § 543.19, and the due process clause of the fourteenth amendment. *Ulmer v. O'Malley*, 307 N.W.2d 775, 777 (Minn.1981). Minnesota interprets its long-arm statute, Minn.Stat. § 543.19, subd. 1(b), to extend personal jurisdiction in its courts to the

maximum extent allowed by the due process clause of the fourteenth amendment. *See, e.g., Vikse v. Flaby,* 316 N.W.2d 276, 281 (Minn.1982) (citing *Toro Co. v. Ballas Liquidating Co.,* 572 F.2d 1267, 1269 (8th Cir.1978)); *In re Shipowners Litigation,* 361 N.W.2d 112, 115 (Minn.Ct.App.1985); *Thompson v. First National Bank of St. Paul,* 360 N.W.2d 446, 447 (Minn.Ct.App. 1985) *pet. for rev. denied* (Minn. March 21, 1985). Thus, the question in this case is whether the exercise of personal jurisdiction over Stratford comports with the due process clause of the Fourteenth Amendment.

■ Due process requires that, in order to be subjected to the jurisdiction of the forum state, a nonresident defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *see Vikse,* 316 N.W.2d at 282. It is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Finally, in contract cases, the contract must have a substantial connection with the state. *See McGee v. International Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). In short, the nonresident must be able to reasonably anticipate being haled into the state's courts. Any contacts by nonresidents with Minnesota that are extensive enough to satisfy due process requirements for exercise of personal jurisdiction are also sufficient to authorize the exercise of personal jurisdiction under the statute.

■ Once defendant challenges personal jurisdiction, the burden is on the plaintiff to prove the minimum contacts necessary for due process. *Hardrives, Inc. v. City of Lacrosse,* 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). The plaintiff need only make a prima facie showing of sufficient state-related activities through the complaint and supporting evidence, which will be taken as true for purposes of evaluating defendant's motion to dismiss. *Id.*

## I.

The Minnesota Supreme Court has adopted the test announced in *Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8th Cir.1965) to apply the fundamental fairness standard of *International Shoe.* Under *Aftanase* a court reviews five factors to determine whether it has authority to assert personal jurisdiction over nonresident defendants. *See Dent–Air, Inc. v. Beech Mountain Air Service, Inc.,* 332 N.W.2d 904, 907 (Minn.1983). The primary factors a court must consider are (a) the quantity of contacts, (b) the nature and quality of contacts, and (c) the connection or relationship between the cause of action and the contacts. Two secondary factors are Minnesota's interest in providing a forum to adjudicate the controversy and the convenience of the parties in litigating in Minnesota. This test is just another way of asking whether a party has established enough contacts with Minnesota to justify being sued here and whether those contacts were established on purpose in order to conduct business in this state. *Real Properties, Inc. v. Mission Insurance Co.,* 427 N.W.2d 665, 668 (Minn.1988).

### Quantity of Contacts

■ To sustain jurisdiction, the quantity of Stratford's contacts must have been "numerous and fairly frequent or regular in occurrence." *Hardrives,* 307 Minn. at 294, 240 N.W.2d at 817. Stratford had so few contacts with Minnesota there does not appear to be sufficient contacts to exercise jurisdiction over Stratford. Stratford and NFD only contemplated one lease agreement. There does not appear from the record to be any intent on the part of Stratford to have future business arrange-

ments with NFD. Moreover, no Stratford employee personally visited NFD in Minnesota. Also, Stratford is not licensed to do business in Minnesota. Stratford does not maintain a local office or bank account in Minnesota. Nor does Stratford have a Minnesota telephone number. Therefore, the number of contacts Stratford had with Minnesota does not appear to be sufficient to have enjoyed the benefits and protections of the laws of Minnesota. *Hardrives*, 307 Minn. at 294, 240 N.W.2d at 817.

### Nature and Quality of Contacts

■ The nature and quality of the contacts becomes dispositive when, as here, the quantity of contacts is minimal. *See Marquette National Bank v. Norris*, 270 N.W.2d 290, 292 (Minn.1978); *Now Foods Corp. v. Madison Equipment Co.*, 386 N.W.2d 363 (Minn.Ct.App.1986) *pet. for rev. denied* (Minn. Dec. 22, 1986). In reviewing the nature and quality of the contacts, it must be ascertained whether the nonresident "purposefully availed" itself of the benefits and protections of Minnesota law. *Dent Air*, 332 N.W.2d at 907 (citing *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240); *see also Real Properties*, 427 N.W.2d at 668.

Stratford did not purposefully avail itself of the benefits and protections of Minnesota law. Stratford never personally met with NFD in Minnesota. In fact, NFD was the initial solicitor in the transaction. The final loan agreement was drafted in Illinois and executed there. The only contacts that Stratford had with Minnesota in negotiation and performance were some letters it mailed here.

*Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 314 (8th Cir.1982) is a factually similar case. In *Scullin*, the parties had entered into a four-year agreement for the sale of 6,000 railroad car parts involving numerous shipments to Minnesota, and the Eighth Circuit found that the use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision

for delivery within the forum state were secondary factors insufficient to provide the minimum contacts to satisfy due process. *Id.* at 314.

Respondent also argues, and the trial court agreed, that Stratford's filing of a UCC–1 financing statement was a contact of significant quality as it gave Stratford the right to bring a replevin action in Minnesota should NFD default on its lease payments. But where there have been few contacts by a foreign corporation or a nonresident with the forum state the filing of a UCC–1 financing statement has not been a dispositive factor in finding that the nonresident has purposely availed itself of the benefits of the forum state's laws. *See Occidental Fire & Casualty Co. v. Continental Illinois National Bank & Trust Co.*, 689 F.Supp. 564, 567 (E.D.N.C.1988). *See also Foremost Pipeline Construction Co. v. Ford Motor Co.*, 420 F.Supp. 647, 648 (D.S.C.1976).

### Source and Connection of Cause of Action .

■ Appellant's contacts with Minnesota gave rise to the cause of action and thus have some connection with the cause of action. But when the quantity and quality of contacts do not support a claim of jurisdiction this factor has been given little weight. *See Dent–Air*, 332 N.W.2d at 908. Because the quantity and quality of contacts do not support jurisdiction, we give no further consideration to the connection between the cause of action and the contacts.

### The Interest of the Forum State

■ As to the fourth factor, Minnesota does have an interest in providing a forum for its residents who have allegedly been wronged. *Northern States Pump and Supply Co. v. Baumann*, 311 Minn. 368, 249 N.W.2d 182, 185 (1976). This interest, however, is not a contract and cannot establish personal jurisdiction. *See Dent–Air*, 332 N.W.2d at 908.

### The Convenience of the Parties

With regard to the final *Aftanase* factor, Minnesota courts have consistently held

that jurisdiction should be asserted under Minn.Stat. § 543.19 whenever the minimal contacts are present, unless the state's forum is not convenient. *Hardrives*, 307 Minn. at 294, 240 N.W.2d at 817. We need not reach this consideration in the case at bar because we hold that minimum contacts sufficient to satisfy constitutional requirements for the defense of personal jurisdiction are not present.

## II.

Respondent argues that the trial court's ruling is correct even if Stratford did not have the requisite contacts sufficient to exercise personal jurisdiction because the trial court had jurisdiction over United and United is Stratford's agent. It is true that the forum-related activities of an agent are imputable to the principal and can be counted as the principal's contacts for jurisdictional purposes. *See Ganis Corporation of California v. Jackson*, 822 F.2d 194, 197 (1st Cir.1987). *See also First National Bank of Minneapolis v. White*, 420 F.Supp. 1331 (D.Minn.1976); *S.S. Kresge Co. v. Kamei–Autokomfort*, 363 F.Supp. 257 (D.Minn.1973).

In order for the trial court to find jurisdiction over Stratford because of an agency relationship with United, NFD needs to show 1) that Stratford manifested that United act for it, 2) that United accepted this undertaking, and 3) that there was an understanding between Stratford and United that Stratford was to be in control of the undertakings. *See Restatement (Second) of Agency*. The only evidence NFD had that United is Stratford's agent is NFD's naked assertion in its complaint and supporting affidavit.

In order to successfully meet its burden of proof NFD cannot rely upon general allegations that an agency relationship exists but must demonstrate specific facts constituting an agency relationship sufficient to allow a court to exercise personal jurisdiction. *See Erickson v. General United Life Insurance Co.*, 256 N.W.2d 255, 259 (Minn.1977) (general allegations

that agency relationship exists are insufficient to withstand motion for summary judgment; particularized facts are needed). NFD's naked assertion of agency is insufficient evidence to establish a prima facie case of agency between Stratford and United. Because NFD failed to establish an agency relationship, there is no jurisdiction over Stratford through United.

## DECISION

The trial court erred in denying appellant's motion to dismiss for lack of personal jurisdiction. Appellant had insufficient contacts with Minnesota for the court to exercise personal jurisdiction in conformity with the due process requirements of the Fourteenth Amendment of the United States Constitution.

REVERSED.