NUMBER 13-04-101-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                      

IRA RESOURCES, INC., ET AL.,                                        Appellants,

v.

ENRIQUE JUAN GRIEGO AND 
SONYA GRIEGO,                                                                        Appellees.
                                                                                                                                      

On appeal from the 332nd District Court of Hidalgo County, Texas.
                                                                                                                      

O P I N I O N

Before Chief Justice Valdez and Justices Castillo and Garza 
Opinion by Justice Garza

          In this interlocutory appeal, IRA Resources, Inc., Eldorado Bank, and California
Bank and Trust (as successor in interest to Eldorado Bank) challenge the trial court’s
denial of their special appearances. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7)
(Supp. Vernon 2004–05). Because we conclude that the trial court has specific jurisdiction
over IRA Resources but no jurisdiction over Eldorado Bank or California Resources, the
trial court’s ruling is affirmed in part and reversed and rendered in part. 
I. Background 
          This case arises from the alleged sale of an unregistered security. In April 2001,
Abraham Martinez approached Enrique and Sonya Griego about an investment earning
a guaranteed annual return of 14%.


 The investment would work as follows. Martinez,
acting on behalf of SPA Marketing, LLC (“SPA”), would sell the Griegos a number of
“Customer Owned Coin Operated Telephones” owned by American Telecommunications
Company, Inc. (“ATC”).


 The Griegos would then enter a service contract with Alpha
TelCom, Inc. (“Alpha”), ATC’s parent corporation, under which Alpha would “perform
virtually all services required to maintain the pay telephones in good working order.” In
exchange, Alpha would receive 70% of the adjusted gross revenue generated by the
telephones and ATC would disburse the balance of the revenue to the Griegos. In the
event the Griegos became dissatisfied with the arrangement, ATC would buy back the
telephones according to a fixed price schedule.


 
          The Griegos were interested in the investment and agreed that Enrique Griego
would purchase five telephones for $5,000 apiece, but they wanted to use qualified
retirement funds for the purchase. Martinez advised the Griegos that in order to hold the
telephones in an individual retirement account (“IRA”), they would need to roll the IRA into
a self-directed IRA administered by IRA Resources, Inc. and Eldorado Bank, California
corporations with their primary places of business in San Diego County, California. 
According to the Griegos, Martinez claimed that as an agent of IRA Resources and
Eldorado Bank, he was authorized to open accounts for them with the companies. He
provided the Griegos with forms to execute the rollover. He also provided them with an
investment directive to purchase five telephones from ATC and an indemnity agreement
in favor of IRA Resources and Eldorado Bank. Enrique Griego completed the forms
provided by Martinez and tendered a check for $25,500 payable to IRA Resources c/o
Eldorado Bank and a money order for $50 payable to IRA Resources. Everything was then
forwarded to IRA Resources.
          After receiving the application, IRA Resources retained the $50 money order as an
account initiation fee and opened a self-directed IRA for Enrique Griego. Griego’s check
for $25,500 was deposited with Eldorado Bank in a general account for the benefit of self-directed IRA holders. Pursuant to Griego’s investment directive, IRA Resources issued a
check in the amount of $25,000 payable to ATC for the purchase of five telephones. Title
to the telephones was granted to “Eldorado Bank Trust FBO Enrique Griego, SEP
#153731SE.” The $500 difference between the $25,500 check issued by Enrique Griego
to IRA Resources and the $25,000 check issued by IRA Resources to ATC remained
deposited in the general account with Eldorado Bank.
          As the administrator of Griego’s self-directed IRA, IRA Resources promised to
provide certain record-keeping services. For instance, it promised to issue quarterly
statements regarding the performance of the investments held in Griego’s self-directed IRA
and was obligated to report the IRA’s income to the Internal Revenue Service. 
          Sometime in June 2001, ATC ceased making payments to the owners of telephones
subject to service agreements with Alpha. Subsequently, IRA Resources informed ATC
that it would not process any more account applications directing investments in ATC until
ATC met its obligations to IRA Resources’ existing clients. 
          In September 2003, Enrique and Sonya Griego filed a second amended original
petition in the 332nd District Court of Hidalgo County, naming IRA Resources, Eldorado
Bank, and California Bank & Trust (as successor in interest to Eldorado Bank) as
defendants. The petition alleged that the sale and service agreements between Griego,
ATC, and Alpha constituted the illegal sale of an unregistered security in violation of the
Texas Securities Act. See Tex. Rev. Civ. Stat. Ann. art. 581-4 (Vernon Supp. 2004–05)
(defining “security”). The petition further alleged that the defendants violated article 581-33
of the securities act through their participation in the illegal sale by providing financial
services that were necessary for the transaction and by aiding and abetting ATC and Alpha
in a scheme to defraud investors by allowing their names, reputations, and stability to be
used to promote the sale of the unregistered security. See Tex. Rev. Civ. Stat. Ann. art.
581-33 (Vernon Supp. 2004–05). 
          The defendants responded by filing special appearances, claiming that they would
be denied due process if required to submit to the trial court’s jurisdiction. The trial court
denied the special appearances, and this appeal ensued. 
II. Standard of Review
          Whether a court has personal jurisdiction over a defendant is a question of law. Am.
Type Culture Collection v. Coleman, 83 S.W.3d 801, 805–06 (Tex. 2002). In resolving this
question of law, a trial court must frequently resolve questions of fact. Id. at 806. On
appeal, the trial court’s ruling on a special appearance is subject to de novo review, but
appellate courts may be called upon to review the trial court’s resolution of a factual
dispute. Id. When the trial court does not issue findings of fact, reviewing courts should
presume that the trial court resolved all factual disputes in favor of its judgment. Id. A trial
court’s resolution of disputed factual issues can be challenged on both factual and legal
sufficiency grounds. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.
2002). 
III. Personal Jurisdiction over Nonresident Defendants
          The plaintiff bears the initial burden of pleading allegations sufficient to bring a
nonresident defendant within the provisions of the long-arm statute. Am. Type Culture, 83
S.W.3d at 807 (citing McKanna v. Edgar, 388 S.W.2d 927, 930 (Tex. 1965)). But upon
filing a special appearance, the nonresident defendant assumes the burden to negate all
the bases of personal jurisdiction alleged by the plaintiff. Id. (citing Kawasaki Steel Corp.
v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985) (per curiam)).
A. IRA Resources 
1. Texas Long-Arm Statute
          We begin with the Texas long-arm statute, which must confer jurisdiction over IRA
Resources in order for jurisdiction to be proper. See Marchand, 83 S.W.3d at 795 (“The
Texas long-arm statute governs Texas courts’ exercise of jurisdiction over nonresident
defendants.”). The Texas long-arm statute permits Texas courts to exercise jurisdiction
over a nonresident defendant that “does business” in Texas and lists some activities that
constitute “doing business.” Id. (citing Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon
1997)). A nonresident does business in Texas, for instance, if it “contracts by mail or
otherwise with a Texas resident and either party is to perform the contract in whole or in
part in this state.” Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1). The parties do not
dispute that IRA Resources contracted with Enrique Griego by mail. Griego performed his
part of the contract in Texas by mailing his payment for IRA Resources’ services from
Texas. We therefore conclude that IRA Resources did business in Texas and that Texas
courts have jurisdiction over IRA resources under the long-arm statute. 
2. Minimum Contacts
          Next, we must determine whether the exercise of jurisdiction over IRA Resources
is constitutional under the Due Process Clause of the Fourteenth Amendment. See Am.
Type Culture, 83 S.W.3d at 806. The first component of this inquiry is the nonresident’s
contacts with the forum state. See Marchand, 83 S.W.3d at 795. Our objective is to
protect the nonresident from being haled into court when its relationship with Texas is too
attenuated to support jurisdiction. Am. Type Culture, 83 S.W.3d at 806 (citing Schlobohm
v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990)). The nonresident must have the “minimum
contacts” necessary to give rise to either specific or general jurisdiction. See Marchand,
83 S.W.3d at 795–96 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.
408, 413–14 (1984); Guardian Royal Exch. Assurance., Ltd. v. English China Clays,
P.L.C., 815 S.W.2d 223, 226 (Tex. 1991)). Although the Griegos maintain that the
contacts in this case are sufficient to create both specific and general jurisdiction, their
allegations are more consistent with specific jurisdiction. We therefore begin with specific
jurisdiction. 
          When specific jurisdiction is asserted, the minimum contacts analysis focuses on
the relationship among the defendant, the forum, and the litigation. Guardian Royal, 815
S.W.2d at 228. Specific jurisdiction over a nonresident defendant exists if (1) the
defendant’s contacts with the forum are purposeful and (2) the cause of action arises from
or relates to those contacts. Am. Type Culture, 83 S.W.3d at 806 (citing Guardian Royal,
815 S.W.2d at 227). 
          According to the Griegos, IRA Resources had direct and purposeful contacts with
Texas through Martinez, its agent, who sold the services of IRA Resources to them in
Texas. IRA Resources accepted and processed the account application and other
paperwork given to Enrique Griego by Martinez in Texas and completed by Griego in
Texas. It also accepted Enrique Griego’s account initiation fee of $50, which was mailed
from Texas. IRA Resources promised to perform record-keeping services for Griego’s self-directed IRA and subsequently sent him periodic statements of account activities. IRA
Resources also provided similar services for at least twenty-four other Texas residents who
invested in ATC through self-directed IRAs that it administers. 
          The Griegos further contend that their cause of action against IRA Resources arises
from and relates to the company’s contacts with Texas. They allege that IRA Resources
participated in and aided and abetted the sale of an unregistered security by, among other
things, providing services that were necessary for the transaction. The Griegos claim they
could not have purchased the telephones with qualified retirement funds without a self-directed IRA account administered by a third party. IRA Resources provided this service
and purchased the telephones on behalf of Enrique Griegos. The cause of action now
asserted by the Griegos arises from and relates to the contacts flowing from these
services. 
          In response, IRA Resources maintains that the Griegos have failed to produce “any
evidence” that Martinez was its agent. It argues that Martinez’s actions should therefore
not be considered as a basis for exercising jurisdiction. See Am. Type Culture, 83 S.W.3d
at 806 (“a defendant [cannot] be haled into a Texas court for the unilateral acts of a third
party”). According to IRA Resources, the facts alleged by the Griegos are insufficient to
create specific jurisdiction. 
          Because the parties dispute whether Martinez was an agent of IRA Resources, an
issue which will affect our minimum contacts analysis, we turn to the applicable agency
principles to resolve the issue. 
          Agency will not be presumed. Happy Indus. Corp. v. Am. Specialties, Inc., 983
S.W.2d 844, 852 (Tex. App.—Corpus Christi 1998, pet. dism’d w.o.j.). Apparent agency,
the theory advanced by the Griegos, exists where the principal’s conduct would lead a
reasonably prudent person to believe that the agent possessed the authority to act on
behalf of the principal. See NationsBank, N.A. v. Dilling, 922 S.W.2d 950, 953 (Tex. 1996)
(per curiam); Maccabees Mut. Life Ins. Co. v. McNiel, 836 S.W.2d 229, 232–33 (Tex.
App.—Dallas 1992, no writ). To establish apparent authority, one must show that a
principal either knowingly permitted an agent to hold itself out as having authority or
showed such lack of ordinary care as to clothe the agent with indicia of authority. Dilling,
922 S.W.2d at 952–53 (citing Ames v. Great S. Bank, 672 S.W.2d 447, 450 (Tex. 1984)). 
A court may consider only the conduct of the principal leading a third party to believe that
the agent has authority in determining whether an agent has apparent authority. Id. at 953
(citing Southwest Title Ins. Co. v. Northland Bldg. Corp., 552 S.W.2d 425, 428 (Tex.
1977)). 
          As it relates to the issue of agency, we construe IRA Resources’ challenge to be a
“no-evidence” or legal sufficiency challenge. When reviewing a legal-sufficiency point, we
consider only the evidence and inferences that tend to support a finding and disregard all
evidence and inferences to the contrary. N. Am. Refractory Co. v. Easter, 988 S.W.2d
904, 908 (Tex. App.—Corpus Christi 1999, pet. denied). If there is any evidence of
probative force to support the finding (i.e., more than a scintilla), we will overrule the issue. 
Id. 
          The Griegos have not produced legally sufficient evidence to establish that Martinez
was acting as an apparent agent for IRA Resources when he offered the services of IRA
Resources to the Griegos. There is no evidence that IRA Resources was aware or had
reason to be aware of Martinez’s actions. Furthermore, the Griegos have failed to identify
any conduct on the part of IRA Resources that would lead a reasonably prudent person
to conclude that Martinez had authority to act on behalf of IRA Resources. In fact, the only
conduct by IRA Resources that is part of the Griegos’ theory of agency is the company’s
acceptance of Enrique Griego’s account application; however, this conduct does not tend
to show that IRA Resources was aware of Martinez’s involvement in the transaction or that
IRA Resources approved of such involvement. There is no evidence that Martinez
completed the forms for Enrique Griego, that he mailed the forms to IRA Resources for
Griego, or that the forms included any indication of Martinez’s involvement. For the limited
purpose of reviewing the trial court’s ruling on IRA Resources’ special appearance, we
conclude that Martinez was not an agent for IRA Resources. A finding of jurisdiction
cannot be based on his actions. See Am. Type Culture, 83 S.W.3d at 806. 
          Having concluded that Martinez was not an apparent agent of IRA Resources, we
must decide whether the remaining, undisputed contacts are sufficient to confer specific
jurisdiction. We conclude that they are. IRA Resources’ contacts were purposeful, see
Am. Type Culture, 83 S.W.3d at 806; they increased the company’s revenues and profits
by generating increased fees from a Texas resident. IRA Resources knew its fees were
coming from Texas because the application filed by Griego listed his address in Texas. 
With full knowledge that it was contracting with a Texas resident, IRA Resources agreed
to act as the administrator of Griego’s self-directed IRA, accepted his account initiation fee,
created an account for him, and purchased telephones from ATC on his behalf. The cause
of action asserted against IRA Resources arises from and relates to these contacts. See
id. The Griegos allege that IRA Resources participated in and aided and abetted the sale
of an illegal security by, among other things, selling services that were necessary to
accomplish the transaction. Accordingly, we conclude that IRA Resources purposefully
availed itself of the privilege of conducting business in Texas and could have reasonably
anticipated being haled into a Texas court. See Gen. Elec. Co. v. Brown & Ross Int’l
Distribs., Inc., 804 S.W.2d 527, 531 (Tex. App.—Houston [1st Dist.] 1990, writ denied)
(holding that nonresident defendant who “expected to profit from its activities . . . [in Texas]
and . . . received a benefit from Texas residents . . . could reasonably have assumed that
a Texas court might call”). 
3. Fair Play and Substantial Justice
          In addition to minimum contacts, due process requires that the maintenance of the
suit not offend “traditional notions of fair play and substantial justice,” Am. Type Culture,
83 S.W.3d at 806 (quoting Int’l Shoe Co. v. Washington, 326 U.S. 310, 316 (1940));
however, only in rare cases will the exercise of jurisdiction not meet this test when the
nonresident defendant has purposefully established minimum contacts with the forum
state, Guardian Royal, 815 S.W.2d at 231. This is not one of those cases. 
          The Griegos have alleged that the exercise of jurisdiction over IRA Resources will
not offend traditional notions of fair play and substantial justice for five reasons: (1) IRA
Resources will not be substantially burdened; (2) Texas has a strong interest in protecting
its residents who purchase securities; (3) Texas is a convenient forum; (4) a Texas court
can efficiently resolve the controversy and promote the policies implicated by the Texas
Securities Act; and (5) Texas has an interest in providing an effective means of redress for
its residents. See id. (listing five factors that should be considered, as appropriate, in
determining whether the maintenance of a suit offends traditional notions of fair play and
substantial justice).
          Although “it is incumbent upon the defendant to present ‘a compelling case that the
presence of some consideration would render jurisdiction unreasonable,’” IRA Resources
has presented no such arguments. See id. Consequently, it has failed to negate
jurisdiction on this basis. See Am. Type Culture, 83 S.W.3d at 807 (“upon filing a special
appearance, the nonresident defendant assumes the burden to negate all the bases of
personal jurisdiction alleged by the plaintiff”). We conclude that the trial court did not err
in denying the special appearance filed by IRA Resources. 
B. Eldorado Bank
1. Texas Long-Arm Statute
          The Griegos contend that jurisdiction over Eldorado Bank is proper under the Texas
long-arm statute because Eldorado Bank engaged in business in Texas by acting as an
account custodian for the self-directed IRA accounts administered by IRA Resources. See
Marchand, 83 S.W.3d at 795. Because the requirements of the Texas long-arm statute
are met only if the concerns of due process are satisfied, we proceed directly to the
minimum contacts analysis without passing on the issue of whether the allegations against
Eldorado Bank amount to conducting business in Texas under the long-arm statute. See
Guardian Royal, 815 S.W.2d at 226. 
2. Minimum Contacts
          The Griegos allege that Eldorado Bank’s contacts with Texas are sufficient to create
both specific and general jurisdiction. We disagree. 
          We begin with specific jurisdiction. Where, as here, there are multiple defendants,
we must test each defendant’s actions and contacts with the forum separately. Shapolsky
v. Brewton, 56 S.W.3d 120, 132 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). 
Contrary to the spirit of this directive, the Griegos have lumped Eldorado Bank’s contacts
together with those of IRA Resources. For instance, the Griegos allege that both Eldorado
Bank and IRA Resources accepted payment for fees charged to Enrique Griego, sent
periodic statements to Griego, and promised to prepare tax documents showing activity in
his account. In addition, the Griegos contend that Martinez was an apparent agent of both
IRA Resources and Eldorado Bank.
          We address this last contention first. For reasons similar to those stated above
regarding IRA Resources, we conclude that there is legally insufficient evidence to prove
that Martinez was an apparent agent of Eldorado Bank. The Griegos simply have not
produced any evidence upon which a reasonably prudent person could conclude that
Martinez had authority to act for Eldorado Bank. The only conduct by Eldorado Bank that
is identified in the Griegos’ theory of agency is the opening of an account for IRA
Resources; however, this conduct in no way indicates that Eldorado Bank approved of or
authorized Martinez’s actions in soliciting business from the Griegos. See Dilling, 922
S.W.2d at 953 (“A court may consider only the conduct of the principal leading a third party
to believe that the agent has authority in determining whether an agent has apparent
authority.”). In fact, there is no evidence whatsoever that Eldorado Bank was even aware
of Martinez’s actions. Accordingly, we will not impute Martinez’s actions to Eldorado Bank
for the purpose of determining jurisdiction. 
          The remaining contacts alleged by the Griegos are unsubstantiated by the record. 
There is no evidence that Eldorado Bank ever collected a fee from the Griegos, sent
statements to the Griegos, or promised to file tax documents on their behalf. To the
contrary, the evidence shows that Eldorado Bank never had any contact with the Griegos
but instead dealt directly and exclusively with IRA Resources. In fact, the record shows
that Enrique Griego has never had an account with Eldorado Bank. Rather, IRA
Resources has a general account with Eldorado Bank in which the funds of self-directed
IRA holders, including those of Enrique Griego, are intermingled. Although it might be
reasonable to infer that Eldorado Bank profited by Griego’s relationship with IRA
Resources, such random, fortuitous, and attenuated contact with Texas is insufficient for
specific jurisdiction. We conclude that Eldorado Bank’s contacts with Texas were not
purposeful and that the exercise of specific jurisdiction would violate the Due Process
Clause of the Fourteenth Amendment. 
          Next, we turn to the requirements for general jurisdiction. General jurisdiction allows
a forum to exercise jurisdiction over a defendant even if the cause of action did not arise
from or relate to a defendant’s contacts with the forum. Am. Type Culture, 83 S.W.3d at
806–07 (citing Guardian Royal, 815 S.W.2d at 228). General jurisdiction is present when
a defendant’s contacts with a forum are “continuous and systematic,” a more demanding
minimum-contacts analysis than specific jurisdiction. Id. (citing Guardian Royal, 815
S.W.2d at 228).
          The Griegos have failed to establish the continuous and systematic contacts
necessary for general jurisdiction. The only evidence submitted by the Griegos to prove
general jurisdiction is a report from the website of the Texas Secretary of State indicating
that Eldorado Bank has filed five UCC financing statements in Texas, reflecting its status
as a “secured party.” From this evidence, the Griegos ask that we infer Eldorado Bank has
continuously and systematically conducted banking business in Texas by loaning money
to Texas businesses and securing those loans by filing mortgages and financing
statements in Texas. We will not do so.
          Although the parties have cited no cases from Texas courts on the issue of whether
the filing of financing statements constitutes continuous and systematic contacts, courts
from other jurisdictions have resoundingly rejected any such possibility. In Soma Med. Int’l
v. Standard Chtd. Bank, for instance, the Tenth Circuit held that under Utah law, the filing
of financing statements and the recording of other instruments was not the kind of
substantial and continuous activity necessary to subject a nonresident defendant to general
jurisdiction. Soma Med. Int’l v. Standard Chtd. Bank, 196 F.3d 1292, 1296 (10th Cir.
1999). Other courts have reached similar conclusions. See Neb. Beef, Ltd. v. KBK Fin.,
Inc., 288 F. Supp. 2d 985, 988–89 (S.D. Iowa 2003) (holding that nonresident’s filing of a
financing statement in forum state, transfer of $71 million into forum state, and purchase
of $71 million of accounts receivable from company located in forum state were not
continuous and systematic contacts); Occidental Fire & Cas. Co. v. Cont’l Ill. Nat'l Bank &
Trust Co. of Chicago, 689 F. Supp. 564, 567 (E.D. N.C. 1988) (holding that filing of
financing statements in North Carolina does not create the minimum contacts necessary
for general jurisdiction); Goehring v. Superior Court, 73 Cal. Rptr. 2d 105, 111–15 (Cal.
App. 4th 1998) (holding that filing a financing statement in forum state is insufficient for
minimum contacts); NFD, Inc. v. Stratford Leasing Co., 433 N.W.2d 905, 909 (Minn. Ct.
App. 1988) (holding that no minimum contacts exist based on filing of financing statement);
Ensign v. Bank of Baker, 676 N.W.2d 786, 791 (N.D. 2004) (holding that making loans to
North Dakota residents and filing financing statements with the North Dakota Secretary of
State are not minimum contacts necessary for general jurisdiction). 
          Having concluded that Eldorado Bank lacks the minimum contacts necessary for
either specific or general jurisdiction, we need not decide whether the maintenance of a
suit against Eldorado Bank in Texas would offend the traditional notions of fair play and
substantial justice. The trial court erred by denying Eldorado Bank’s special appearance.
C. California Bank
          For the reasons stated above regarding Eldorado Bank, we also conclude that the
trial court erred by denying California Bank’s special appearance, as its liability derives
entirely from Eldorado Bank through a successor-in-interest theory. There is no specific
jurisdiction over Eldorado Bank and therefore no specific jurisdiction over California Bank. 
Likewise, the allegations made by the Griegos to establish general jurisdiction over
California Bank (namely, the filing of financing statements in Texas) fail for the same
reasons as the allegations against Eldorado Bank. 
IV. Conclusion 
          The trial court’s order denying the special appearances of IRA Resources, Eldorado
Bank, and California Bank is affirmed with respect to IRA Resources and reversed and
rendered with respect to Eldorado Bank and California Bank. 
                                                                                                                                 _______________________
                                                                               DORI CONTRERAS GARZA,
                                                                               Justice
 
Opinion delivered and filed 
this the 31st day of March, 2005.