**MACCABEES MUTUAL LIFE
INSURANCE COMPANY,
Appellant,**

**v.**

**Tom McNIEL, Appellee.**

**No. 05–91–00743–CV.**

Court of Appeals of Texas,
Dallas.

July 2, 1992.

Henry J. Voegtle, Dallas, for appellant.

Stan McMurry, Dallas, for appellee.

Before ENOCH, C.J., and THOMAS and KINKEADE, JJ.

## OPINION

ENOCH, Chief Justice.

Maccabees Mutual Life Insurance Company (Maccabees) appeals from a trial court judgment in favor of Tom McNiel under TEX.INS.CODE ANN. art. 3.62, art. 21.21, § 16 (Vernon 1981). We reverse the award of $4,548 as a penalty under article 3.62 [1] and, in all other respects, affirm.

## FACTUAL BACKGROUND

In September 1987, the Dallas County Hospital District (DCHD) sought to reduce the cost of its Hartford group life insurance coverage and solicited proposals from other insurance carriers. Mike Evans, an insurance broker, provided a proposal for placing coverage with Maccabees. Rather than rely on the insurance broker, DCHD chose to negotiate the terms of the insurance coverage directly with Maccabees. DCHD contacted Jim Whyburn, whose name appeared on the proposal.

Two DCHD employees met with Whyburn, a Maccabees group sales representative, on September 30, 1987, the day before coverage under the Hartford policy expired. Whyburn assured them that he had authority to bind coverage as a representative of Maccabees, not as an independent broker, and that coverage would be in force the next day upon payment of $15,000. Whyburn completed a Preliminary Application for Group Insurance for DCHD during the meeting. He initialed the following handwritten notation on the application: "All actively not at work will be insured and the non-active waiver clause will be

---

1. All statutory references in this opinion apply to TEX.INS.CODE ANN. art. 1.01 *et seq.* (Vernon 1981) unless otherwise indicated.

waived." The application also contained the following preprinted language: "No insurance shall become effective until ... this application is approved by the Company at its Home Office." DCHD hand-delivered a $15,000 check to Whyburn on October 1, 1987.

Maccabees claims that Whyburn sent a letter to DCHD dated October 1, 1987, thanking it for selecting Maccabees and stating that Maccabees needed a list of employees not actively at work "to make sure we are not buying a death claim." DCHD denies receiving the letter. The trial court found that Whyburn had backdated the letter to October 1 and that DCHD did not see the letter until after this suit was filed.

The Preliminary Application for Group Insurance asked whether any employees were not working on an active full-time basis. "Yes" was checked and, beside it, Whyburn handwrote: "and has been waived." Whyburn acknowledged the application's requirement of an Actively at Work Statement with the handwritten notation: "will follow." DCHD employees understood this to mean that Whyburn wanted lists of employees not actively at work. Three lists were forwarded to him.

On November 17, 1987, in response to another unrelated death benefits claim, Maccabees sent a letter to DCHD declining the application, based on the provision in the application that coverage was subject to home office approval. Maccabees withheld approval because lists of inactive employees were incomplete and did not indicate the reasons for inactive status.

Vivien McNiel, an active employee of the hospital gift shop, died on October 26, 1987.

Her beneficiary, Tom McNiel, presented DCHD with a claim for benefits in the amount of $37,900. Maccabees received the claim after November 17, 1987. No benefits were paid.

McNiel retained counsel in May, 1988. McNiel's counsel sought payment from DCHD and Maccabees. He also demanded from Maccabees the statutory penalty provided by article 3.62 of the Insurance Code. DCHD tendered the full amount of death benefits on July 25, 1988, but McNiel did not accept the tender until February 28, 1989. In the meantime, McNiel filed suit against DCHD and Maccabees. A bench trial was held on January 31, 1991, and a final judgment was signed February 14, 1991. The judgment awarded McNiel $75,800 (two times his actual damages of $37,900), $4,548 (article 3.62 penalty),[2] attorneys' fees, and prejudgment and postjudgment interest.

## WHYBURN'S AUTHORITY TO BIND COVERAGE

■ In its first point of error, Maccabees contends that the trial court erred in its conclusions of law that (1) the binding authority of a soliciting agent or local recording agent had no applicability in this case because Whyburn acted with actual, apparent, and implied authority, and (2) Whyburn possessed authority to bind coverage as its employee or agent. Maccabees argues that Whyburn should be classified as a person soliciting an application for life insurance without the power to waive, change, or alter policy terms. *See* TEX.INS. CODE ANN. art. 21.04 (Vernon Supp.1985).[3] The actual authority of a soliciting agent to make representations on behalf of an insur-

---

2. Twelve percent of $37,900 is $4,548.

3. TEX.INS.CODE ANN. art. 21.04 (Vernon Supp.1985) provides:

Any person who solicits an application for life, accident, or health insurance shall, in any controversy between the assured and his beneficiary and the company issuing any policy upon such application or between the assured and the assured's dependents and that company, be regarded as the agent of the company, and not the agent of the insured, but such agent shall not have the power to waive,

change or alter any of the terms or conditions of the application or policy.

TEX.INS.CODE ANN. art. 21.14, § 2 (Vernon 1981) provides, in part:

By the term "Solicitor" is meant a person who is a bona fide solicitor in the office of, and engaged in the business of soliciting insurance on behalf of a local recording agent, and who offices with such local recording agent, and who does not sign and execute policies of insurance, and who does not maintain company records of such transactions.

ance company is much more limited than the authority of a local recording agent,[4] which is co-extensive with that of the company. *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 692–93 (Tex.1979).

The record in this case does not support the classification of Whyburn as either a soliciting agent or a local recording agent. Rather, we find that the trial court correctly classified Whyburn as an "agent of the company" under article 21.02 of the Insurance Code.[5] The record establishes that Whyburn received an application, collected premium, and acted in the negotiation of an insurance contract in the course of his employment with Maccabees.

■ The statutory authority granted an agent under article 21.02 does not authorize an agent to misrepresent policy coverage and bind the insurance company to his misrepresentations unless the insurance company approves the agent's conduct by authorizing the agent's wrongful acts or subsequent ratification of those acts. *Royal Globe*, 577 S.W.2d at 693 (citing *International Security Life Ins. Co. v. Finck*, 496 S.W.2d 544, 546 (Tex.1973)).[6] Additionally, an insurance company cannot assert an agent's lack of actual authority to escape liability if its agent or employee is clothed with apparent authority to do the act or make the representation. *Royal Globe*, 577 S.W.2d at 693–94.

■ Apparent authority is based on the doctrine of estoppel. *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex.1981). To charge a principal through apparent authority of an agent, the plaintiff must establish that the principal's conduct would lead a reasonably prudent per-

**4.** Tex.Ins.Code Ann. art. 21.14, § 2 (Vernon 1981) provides, in part:

By the term "Local Recording Agent" is meant a person or firm engaged in soliciting and writing insurance, being authorized by an insurance company ..., to solicit business and to write, sign, execute, and deliver policies of insurance, and to bind companies on insurance risks, and who maintain an office and a record of such business and the transactions which are involved, who collect premiums on such business and otherwise perform the customary duties of a local recording agent representing an insurance carrier in its relation with the public; or a person or firm engaged in soliciting and writing insurance, being authorized by an insurance company ..., to solicit business, and to forward applications for insurance to the home office of the insurance companies and insurance carriers, where the insurance company's and insurance carrier's general plan of operation in this State provides for the appointment and compensation of agents for insurance and for the execution of policies of insurance by the home office of the insurance company or insurance carrier, or by a supervisory office of such insurance company or insurance carrier, and who maintain an office and a record of such business and the transactions which are involved, and who collect premiums on such business and otherwise qualify and perform the customary duties of a local recording agent representing an insurance carrier in its relations with the public.

**5.** Tex.Ins.Code Ann. art. 21.02 (Vernon 1981) provides, in part:

Any person who solicits insurance on behalf of any insurance company, whether incorpo-

rated under the laws of this or any other state or foreign government, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or adjust, or aid in adjusting, any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request, or by the employment of such insurance company, or of, or by, any broker or other person, shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter.

**6.** McNiel argues that Maccabees should be estopped to repudiate agency due to its failure to deny Whyburn's authority after the receipt of an insurance application and funds. Appellee's Brief at 16. However, he neither asserted this claim in his pleadings, nor did the trial court make findings of ratification or estoppel. Therefore, McNiel waived his right to assert this issue for the first time on appeal. *See* Tex. R.App.P. 52(a).

son to believe that the agent had the authority that he purported to exercise. *Id.;* *Guthrie v. Republic Nat'l Ins. Co.,* 682 S.W.2d 634, 637 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). "Only the conduct of the *principal,* leading one to suppose that the agent has the authority he purports to exercise, may charge the principal through the apparent authority of an agent." *Southwest Title Ins. Co. v. Northland Bldg. Co.,* 552 S.W.2d 425, 428 (Tex. 1977) (emphasis in original). When an agent acts within the scope of this apparent authority, the acts bind the principal as though the agent has actual authority. *Biggs,* 611 S.W.2d at 629. Here, there is no evidence that Whyburn had actual, apparent, or implied authority to bind insurance coverage or waive policy provisions.

We note that the trial court found that Maccabees' November 17, 1987 letter to DCHD provided some evidence of actual authority. The letter stated, in part:

The Preliminary Application for Group Insurance signed by you on September 30, 1987 contains the following provision (Item 2):

"No insurance shall become effective until ... this application is approved by the Company at its Home Office ... otherwise, insurance will become effective only when a policy is delivered and accepted in writing: and in the interim, liability is limited to a return of the initial deposit ..."

We are sorry to inform you that Maccabees Mutual is not able to approve the application for Group Life Insurance for [DCHD].

Maccabees Mutual's group life contract requires that all employees be actively at work on the effective date of the contract in order to be eligible for insurance coverage. The purpose of this provision is to assure us that we are assuming life insurance coverage on a healthy group of active employees. Our original quotation for coverage assumed that this was, in fact, the case. We were then asked to waive this requirement for which we requested a detailed listing of those persons who were not actively at work on the proposed October 1, 1987

effective date and the nature of their inactive status. Our offer was based on the consideration that we'd be agreeable to waive the actively at work for only those employees who were out due to illness, vacation or such other similar limited types of circumstances.

However, the listing we were provided showing thirty-six employees was incomplete with respect to the actual total number of inactive employees and it did not provide any indication of the reason for their particular inactive status (e.g., illness, vacation, etc.) For these reasons, your application failed to meet our underwriting requirements and we must decline it.

This letter provides no evidence of acts by Maccabees that clothed Whyburn with implied or actual authority to bind insurance or waive policy provisions. Maccabees' admission that Whyburn, as its full-time employee as a group sales representative in its Dallas office, discussed a policy of group life insurance with DCHD employees is insufficient to prove that Whyburn acted with apparent authority to bind coverage and waive policy provisions. We agree with Maccabees that the trial court erred by concluding that Whyburn possessed authority to bind coverage and that he had actual, apparent, and implied authority to do so. Accordingly, we sustain Maccabees' first point of error. However, for the reasons that follow, we conclude that there is sufficient evidence to support the trial court's judgment awarding damages under article 21.21, § 16 of the Insurance Code.

## LIABILITY FOR MISREPRESENTATIONS UNDER THE DTPA AND ARTICLE 21.21, § 16 OF THE INSURANCE CODE

An article 21.02 agent of an insurance company who misrepresents coverage may render the insurance company he represents vicariously liable for the misrepresentations under the Deceptive Trade Practices–Consumer Protection Act (DTPA) and article 21.21, § 16 of the Insurance Code. *Royal Globe Ins. Co. v. Bar Consultants,*

*Inc.,* 577 S.W.2d 688, 689–93 (Tex.1979); *Lucadou v. Time Ins. Co.,* 758 S.W.2d 886, 888 (Tex.App.—Houston [14th Dist.] 1988, no writ); *see generally* Nicolai von Krisler, *A Survey of Insurance Litigation Under the Texas Deceptive Trade Practices Act,* 18 TEX.TECH.L.REV. 177, 185–91 (1987). The trial court found Maccabees liable for the following acts or failures to act:

(1) Misrepresenting the terms of a policy;

(2) Disseminating false information with respect to the insurance business;

(3) Representing that its services had benefits (or characteristics) that they did not possess;

(4) Representing that an agreement confers or involves rights or obligations that it does not have;

(5) Failing to disclose information, known at the time of the transaction, concerning services in order to induce [DCHD] to enter into an agreement it would not have entered into had the information been known;

(6) Engaging in unconscionable action or course or [sic] action;

(7) Breaching the duty of good faith and fair dealing; and

(8) Engaging in unfair claims and settlement practices.

In 1987, the Insurance Code provided: Any person who has sustained actual damages as a result of another's engaging in any of the practices declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such acts or practices.

TEX.INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.1985).

Section 4 of the Insurance Code defines unfair methods of competition and unfair and deceptive acts or practices in the business of insurance as including the making of statements misrepresenting terms of a policy contract and the dissemination of false information with respect to the insurance business. TEX.INS.CODE ANN. art. 21.-21, § 4(1), (2) (Vernon 1981).

A regulation of the State Board of Insurance provides that:

It is the purpose of these sections to further define and state the standards that are necessary to prohibit deceptive acts or deceptive practices by insurers and insurance agents and other persons in their conduct of the business of insurance or in connection therewith, whether done directly or indirectly, and irrespective of *whether the person is acting as insurer, principal, agent, employer, or employee, or in other capacity or connection with such insurer.*

State Board of Insurance, 28 TEX.AD-MIN.CODE § 21.1 (West July 21, 1988) (emphasis added). Another regulation provides:

(a) Misrepresentation of insurance policies, unfair competition, and unfair practices by insurers, agents, and other connected persons are prohibited by Article 21.20 and Article 21.21 or by other provisions of the Insurance Code and by these sections of the State Board of Insurance. No person shall engage in this state in any trade practice that is a misrepresentation of an insurance policy, that is an unfair method of competition, or that is an unfair or deceptive act or practice as defined by the provisions of the Insurance Code or as defined by these sections and other rules and regulations of the State Board of Insurance authorized by the Code

(b) Irrespective of the fact that the improper trade practice is not defined in any other section of these rules and regulations, no person shall engage in this state in any trade practice which is determined pursuant by law to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

State Board of Insurance, 28 TEX.AD-MIN.CODE § 21.3 (West July 21, 1988).

The DTPA provides that a false, misleading, or deceptive act or practice includes "representing that goods or services have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have" and "representing that an agreement confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law." TEX.BUS. & COM.CODE ANN. § 17.46(b)(5), (12) (Vernon 1987).

In this case, the representations made by agent Whyburn at the time the policy was sold furnish a basis for Maccabees' liability under the DTPA and article 21.21, § 16. There is sufficient evidence to support the trial court's findings in this regard. *See Royal Globe*, 577 S.W.2d at 694.

### ABSENCE OF INSURANCE POLICY CONTRACT

 In its second point of error, Maccabees asserts that the trial court erred in finding that a contract existed between it and DCHD on October 1, 1987. We agree. When an agent acts within the scope of his apparent authority, the acts bind the principal as though the agent is in actual possession of such authority. *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex.1981). In this case, there is insufficient evidence to establish that Whyburn had actual, apparent, or implied authority to bind coverage with Maccabees. Absent this authority, Whyburn could not enter

into a contract that bound Maccabees.[7] We sustain Maccabees' second point.

### INSURANCE POLICY REQUIREMENT FOR ARTICLE 3.62 PENALTY

 In its third point of error, Maccabees challenges the award of $4,548 (article 3.62 penalty) and $75,800 (two times actual damages award under article 21.21, § 16). Article 3.62 allows an insured to recover twelve percent damages and attorney fees when a life insurance company fails to pay within thirty days after a claim is made.[8] Article 21.21, § 16 allows an insured to recover, in addition to actual damages, court costs, and attorney fees, two times the amount of actual damages upon a finding of a knowing commission of an unlawful deceptive trade practice.[9]

Maccabees argues that the lack of a contract of insurance between it and DCHD precludes the awards under article 3.62 and article 21.21, § 16. We agree that the plain language of article 3.62 requires the existence of an insurance policy before the twelve percent penalty can be imposed. However, article 21.21, § 16 contains no such requirement. Unlike article 3.62, which calls for the twelve percent penalty to be assessed in favor of "the holder of such policy," article 21.21, § 16 allows recovery by "any person who has sustained actual damages" without imposing a requirement that the claimant be a policyholder.

---

7. The absence of an insurance policy, while fatal to a breach of contract claim, in no way limits the insurance company's tort liability under the DTPA and article 21.21, § 16 for its agent's misrepresentations.

8. TEX.INS.CODE ANN. art. 3.62 (Vernon 1981), *repealed by* Act effective September 1, 1991, 72d Leg., R.S., ch. 242, § 12.01(2), 1991 Tex.Gen. Laws 1133, 1138, provides:

In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefore shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay *the holder of such policy*, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. Such attor-

ney fee shall be taxed as a part of the costs in the case. The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of *such policy.*
(emphasis added).

9. In 1987, TEX.INS.CODE ANN. art. 21.21, § 16(b) (Vernon Supp.1987) provided:

(b) In a suit filed under this section, any plaintiff who prevails may obtain: (1) the amount of actual damages plus court costs and reasonable and necessary attorneys' fees. If the trier of fact finds that the defendant knowingly committed the acts complained of, the court shall award, in addition, two times the amount of actual damages; or (2) an order enjoining such acts or failure to act; or (3) any other relief which the court deems proper.

Maccabees challenges the article 21.21, § 16 award on the ground that there is no privity between Tom McNiel and Maccabees. Although article 21.21, § 16 provides a cause of action to a plaintiff damaged by an insurance carrier that engages in an unlawful deceptive trade practice as defined by TEX.BUS. & COM.CODE ANN. § 17.46 (Vernon 1987), the plaintiff is not required to be a consumer of goods or services. *Aetna Casualty and Surety Co. v. Marshall*, 724 S.W.2d 770, 772 (Tex.1987). In this case, Tom McNiel "sustained actual damages" by Maccabees' commission of an unlawful deceptive trade practice and, therefore, is entitled to bring a cause of action under article 21.21, § 16.

We sustain Maccabees' third point as to the imposition of the article 3.62 penalty, but overrule its point as to the imposition of $75,800 under article 21.21, § 16.

### ATTORNEYS' FEES

In its fourth point of error, Maccabees asserts that the trial court erred in awarding attorneys' fees of $30,000 to McNiel. Since the award of attorneys' fees is permitted under article 21.21, § 16, this point is without merit. We overrule Maccabees' fourth point.

We reverse the award of $4,548 as a penalty under article 3.62 and, in all other respects, affirm the judgment of the trial court.