# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 01-20235

_____


TIG INSURANCE COMPANY AND SAFETY LIGHTS SALES & LEASING, INC.,

Plaintiffs-Appellants,

VERSUS

SEDGWICK JAMES OF WASHINGTON AND LUMBERMENS MUTUAL CASUALTY CO.,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Texas
_____

January 9, 2002

Before SMITH and EMILIO M. GARZA, Circuit Judges, and CUMMINGS,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

The district court dismissed TIG Insurance Co. ("TIG") and Safety Lights Sales & Leasing Co.'s ("Safety Lights") claims to recover for the costs of defending a lawsuit; the insurance seller's certificate of insurance added Safety Lights as an additional insured but disclaimed the power to alter an underlying insurance policy. The parties agree that the certificate of insurance's express limitations combine with the policy's terms to bar coverage contractually. Agreeing with the district court that TIG and Safety Lights also failed to provide summary judgment evidence sufficient to support claims for estoppel, mutual mistake, fraudulent misrepresentation, or negligent misrepresentation, we affirm.

[*] District Judge of the Northern District of Texas, sitting by designation.

I.

Lumbermens Mutual Casualty Insurance Company ("Lumbermens") issued two general liability insurance policies to Corporate Express, Inc. ("Corporate Express"). Sedgwick James of Washington ("Sedgwick") brokered the general liability contracts among Corporate Express, its subsidiaries, and Lumbermens.

Corporate Express is the parent corporation of Corporate Express Delivery Systems, Inc. ("Corporate Express Delivery"), which owns several delivery companies, including U.S. Delivery Systems ("U.S. Delivery"), Vianet, Inc. ("Vianet"), and United Transnet, Inc. ("United Transnet"). Sedgwick issued two insurance policies to Corporate Express and its subsidiaries. Policy No. 5AA 038 362-00 ("Policy 362") originally covered United Transnet. An endorsement added Corporate Express Delivery, U.S. Delivery, and Vianet as named insureds. Policy 362 is the only Lumbermens policy that covers U.S. Delivery for general liability; that policy does not provide any additional insured coverage.

Corporate Express and its non-delivery, service companies were covered under Policy No. 5AA 038 300-01 ("Policy 300"), which excluded Corporate Express Delivery from coverage but did provide additional insured coverage "where required by written or oral contract" with respect to "liability arising out of your [the named insured's] operations on premises owned or rented by or to you [the named insured]."

U.S. Delivery is a subsidiary of Corporate Express Delivery and insured only under Policy 362. One of U.S. Delivery's subsidiaries, Vianet, did business with Safety Lights, which, in March 1996, sent a letter to Vianet, requesting, within fifteen days, a certificate of insurance ("COI") that should evidence "waiver of subrogation and additional insured in favor of Safety Lights."

In February 1997, Sedgwick issued a COI to Safety Lights. The top of the certificate stated, "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend, or alter the coverage afforded by the policies below." The certificate erroneously listed Safety Lights as an additional insured under Policy 362.[1]

In June 1997, U.S. Delivery hired Guy Wright, an independent contractor, to deliver a steel plate to Safety Lights's premises. Wright was injured when the plate was dropped on his hand during unloading. Wright sued Safety Lights. TIG, as Safety Lights's insurer, defended, incurring defense costs of $38,650.02, and settled for $235,000.

---

[1] On appeal, Safety Lights argues that Sedgwick issued a confirmation of placement (an insurance binder) for policies 300 and 362 that stated the general liability policy would be "subject to the policy terms, conditions, limitations, and exclusions" of specified Corporate Express policies, each of which included an additional insured clause. Safety Lights, however, failed to raise this point in the cross-motions for summary judgment, so we do not consider it. *See Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000) (refusing to consider limitations argument that party failed to raise at summary judgment); *Hinsley v. Boudloche (In re Hinsley)*, 201 F.3d 638, 645 (5th Cir. 2000) (refusing to consider plaintiff's arguments for tolling limitations where she had not raised it at summary judgment).

## II.

TIG and Safety Lights sued Sedgwick and Lumbermens in state court, and Lumbermens removed to federal court. In the amended complaint, plaintiffs sought a declaration that defendants were obligated to defend and indemnify the *Wright* suit. In the alternative, plaintiffs sought reformation of Policy 362 to conform to the "intent of the parties" and provide coverage for Safety Lights. Plaintiffs also alleged violations of the Texas Insurance Code, Texas Deceptive Trade Practices Act, breach of contract, fraudulent and negligent misrepresentation, breach of the duty of good faith and fair dealing, and fraud. The parties moved for summary judgment on all claims.

The court granted summary judgment for Sedgwick and Lumbermens on the agency claims, plea for reformation, and claims of misrepresentation. TIG and Safety Lights appeal that judgment.

The same standards for summary judgment bind us and the district court. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 301 (5th Cir. 1993). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325

(1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Corp. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

## III.

TIG asserts that Sedgwick's COI should obligate Lumbermens because Sedgwick acted as Lumbermens's agent. Although laying out the agency relationship will aid us in resolving other matters, TIG mistakenly assumes that merely establishing an agency relationship will create liability for Lumbermens. Lumbermens delegated the power to issue COI's to Sedgwick, but those COI's could not alter the underlying policy's terms or create liability. Because the COI expressly disclaims any power to alter the underlying policy, and the parties agree that Lumbermens withheld from Sedgwick the power to alter policies, Sedgwick's issuance of the COI did not create coverage.

### A.

Texas law classifies insurance sellers into three categoriesSSbrokers, soliciting agents, and recording agents. A seller can have an agency relationship with both the insurer and insured. *McKillip v. Employers Fire Ins. Co.*, 932 S.W.2d 268, 270 (Tex. App.SSTexarkana 1996, no writ). Regardless of the agency relationship, the agent's actual or apparent authority to perform a task can create vicarious liability. *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 865 (Tex. App.SSCorpus Christi 1998, writ denied).

3

An insurance seller acts as a broker when a potential insured approaches the insurance seller and the insurance seller only submits an application to the insurance agency. *McKillip*, 932 S.W.2d at 270. If the insurance seller has contact only with the buyer, the seller is a broker. *Id.*; *Employers Cas. Co. v. Mireles*, 520 S.W.2d 516, 520 (Tex. Civ. App.SSSan Antonio 1975, writ ref'd n.r.e.).

An insurance seller acts as a soliciting agent when the seller contacts the insured but the seller lacks the power to modify, change, or waive the terms of the policy. TEX. INS. CODE ANN. art. 21.04 (Vernon Supp. 2001); *Maccabees Mut. Life Ins. Co. v. McNiel*, 836 S.W.2d 299, 231-32 (Tex. App.SSDallas 1992, writ denied). The soliciting agent has limited actual authority to make representations on behalf of the insurance company. *Maccabees*, 836 S.W.2d at 231-32.

A recording agent solicits insurance, has the power to write policies of insurance, binds the insurer on risks, and collects premiums on behalf of the insurer. TEX. INS. CODE ANN. art 21.14 (Vernon Supp. 2001); *Maccabbees*, 836 S.W.2d at 231-32. The recording agent is closest to the principal, and his actions will always bind the principal. *Lexington Ins. Co. v. Buckingham Gate, Ltd.*, 993 S.W.2d 185, 198 (Tex. App.SSCorpus Christi 1999, pet. denied).

If the insurance seller is not a broker, soliciting agent, or recording agent, the seller falls into the catch-all category of the insurer's agent. TEX. INS. CODE. ANN. art. 21.02 (Vernon Supp. 2001); *Maccabees*, 836 S.W.2d at 232. Sellers in this category lack the power to modify the terms of a policy. TEX. INS. CODE art. 21.02 (stating that this article "does not authorize an agent to . . . alter, amend, modify, waiver, or change a term or condition of an insurance policy . . .").

The district court correctly categorized Sedgwick as a soliciting agent, relying on the agency agreement between Sedgwick and Lumbermens to reach this conclusion. The agency agreement authorized Sedgwick to solicit insurance on behalf of Lumbermens but permitted Sedgwick to bind Lumbermens only "to the extent specific authority [was] granted in the schedule(s) attached." Under Policy 362, Sedgwick had the authority to issue COI's and binders but lacked the authority to modify the policy itself.

On appeal, TIG argues that Lumbermens granted Sedgwick the power to issue COI's. The certificates of insurance, however, expressly state that they do not modify the underlying insurance policy. The COI's comport with the agency agreement; Lumbermens granted Sedgwick the power to solicit and negotiate but not to bind. The district court properly categorized Sedgwick as a soliciting agent.

### B.

TIG contends that, regardless of the statutory category in which Sedgwick falls, Lumbermens granted Sedgwick the actual authority to bind the principal. A soliciting agent's misrepresentations can create liability for the principal if the agent acts with actual or apparent authority. *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 98 (Tex. 1994). To confer actual authority, the principal must intentionally confer the authority, explicitly allow the agent to believe that it has the authority, or carelessly permit the agent to believe it has the authority. *Spring Garden 79U, Inc. v. Stewart Title Co.*, 874 S.W.2d 945, 948 (Tex. App.SSHouston [1st Dist.]

1994, no writ).

Lumbermens did not do any of those things. The agency agreement prohibits Sedgwick from modifying the policy. Although Lumbermens permitted Sedgwick to issue COI's, the COI's state that they will not alter the terms of the underlying policy. The terms of the agency agreement and COI make plain that Sedgwick lacked the actual power to modify Policy 362.

## C.

TIG contends that even if Sedgwick acted as a soliciting agent without actual authority, Sedgwick had the apparent authority to modify Policy 362. A person who seeks to bind a principal based on the agent's apparent authority must show that the principal acted in such a way that a reasonably prudent person would believe the agent could bind the principal. *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981). The principal must visibly confer authority for the agent to perform a range of tasks that include the disputed action. *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984). If the agent acts with apparent authority, it will bind the principal, regardless of the agent's actual authority. *Biggs*, 611 S.W.2d at 629. Misrepresentations made when negotiating the terms of a policy can fall within the scope of the agent's apparent authority.[2]

TIG, however, did not present any evidence that Lumbermens visibly had granted Sedgwick the power to add additional insureds. The only visible sign identified by either partySSthe COISSexpressly disclaimed

Sedgwick's power to do so. Sedgwick did not have the power to obligate Lumbermens contractually. We must still consider, however, whether the Sedgwick's actions in issuing the COI, pursuant to delegated authority, support TIG's disguised estoppel or straightforward mutual mistake arguments.

## IV.

TIG makes two possible claims against Lumbermens: (1) The COI should obligate Lumbermens to pay for the *Wright* litigation; and (2) the COI proves that Policy 362 included a mutual mistake and the court should reform Policy 362. Both theories seek to establish Lumbermens's liability despite the express terms of Policy 362 and the COI.

## A.

Estoppel cannot modify the express terms of an insurance policy. *Tex. Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602-03 (Tex. 1988). When a COI expressly incorporates the terms of a policy, the policy trumps the terms of the COI.[3] TIG cites cases from Alaska, Illinois, Massachusetts, New York, and Ohio that permitted insureds to recover under the terms of the COI. Most of these jurisdictions do not read COI's as modifying the underlying insurance policy but, instead, enforce the COI's under an estoppel theory.

---

[2] *Celtic*, 885 S.W.2d at 98-99 (finding that agent's actions bound insurer because reasonable third person would have believed that agent had power to explain policy during negotiations).

[3] *Wann v. Metropolitan Life Ins. Co.*, 41 S.W.2d 50, 51-52 (Tex. Comm'n App. 1931); *Granite Constr. Co. v. Bituminous Ins. Co.*, 832 S.W.2d 427, 429 (Tex. App.SSAmarillo 1992, no writ). Similarly, when determining whether an insurer has a duty to defend the insured, Texas courts will look only to the policy and to the allegations of the complaint. *McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 S.W.3d 725, 728 (Tex. App.—Austin 2000, no writ); *Katerndahl v. State Farm Fire and Cas. Co.*, 961 S.W.2d 518, 522 (Tex. App.SSSan Antonio 1998, no writ).

*E.g., Dumenric v. Union Oil Co.*, 606 N.E.2d 230, 233-34 (Ill. Ct. App. 1992). The Texas Supreme Court has foreclosed us from following them, so we now must consider whether Texas courts can extend coverage beyond the terms of the policy indirectly, through the doctrine of mutual mistake, despite the Texas Supreme Court's prohibition of directly extending coverage.

## B.

TIG argues that the absence of a blanket additional insured provision in Policy 362 was the result of a mutual mistake among Lumbermens, Sedgwick, and Corporate Express. To prevail in this claim, TIG must prove (1) the content of the antecedent agreement and (2) the subsequent mutual mistake when reducing it to writing. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987). TIG failed to prove the content or existence of an antecedent agreement.

TIG must provide summary judgment evidence that the parties "reached a definite and explicit agreement understood in the same sense by both." *Zurich Ins. Co. v. Bass*, 443 S.W.2d 371, 374 (Tex. App.SSDallas 1969, no writ). TIG had to prove that all of the parties intended to include an additional insured clause in Policy 362. TIG points to three pieces of evidence to prove Sedgwick's intent.

First, TIG directs us to correspondence between Sedgwick and Lumbermens regarding the Corporate Express account. The district court correctly noted, however, that this correspondence does not specifically refer to Policy 300 or Policy 362. It is impossible to know whether the letters are probative of the parties' intent to include an additional insured clause in Policy 362.

Second, Carly List, an account manager for Sedgwick, stated that, after the *Wright* litigation, some Lumbermens employees worried that Policy 362 might contain an additional insured clause. This does not speak to whether, before issuing the policy, Lumbermens intended for Policy 362 to include an additional insured clause. Secondhand speculation after the fact does not create a fact question regarding the actual content of the insurance contract; nor should such speculation create a fact question about Lumbermens's beliefs when it issued Policy 362.

Finally, List testified that the terms and conditions for United Transnet's policy ("Policy 362") were intended to be identical to those of Policy 300 (which contained an additional insured clause). Lumbermens responds by pointing out ambiguities in List's affidavit that suggest she might have been describing ongoing negotiations rather than a final agreement. Although these ambiguities might reduce the credibility of her testimony, List's affidavit, on the whole, suggests a fact issue as to whether Sedgwick intended for Policy 362 to include an additional insured clause. TIG offered *some* evidence that Sedgwick believed that Policy 362 would contain an additional insured provision.

TIG, however, failed to offer any summary judgment evidence about *Lumbermens's* beliefs when Sedgwick issued Policy 362. TIG argues that the doctrine of mutual mistake justifies reforming its policy or contract with Lumbermens. Although TIG presented evidence of Sedgwick's mistaken beliefs about the contract, TIG did not provide a shred of evidence that Lumbermens shared those beliefs. Nor did TIG present any evidence that Sedgwick had the statutory, actual, or

6

apparent authority to change the terms of the underlying policy for Lumbermens.

We will not reform the terms of the insurance policy without *some proof* that the party with the power to do so shared an antecedent understanding. Because TIG failed to provide proof that the relevant parties shared an antecedent agreement, its plea for reformation must fail under Texas law.

V.

TIG argues that Sedgwick's erroneous COI is a fraudulent or negligent misrepresentation. The district court found that Safety Lights and Corporate Express did not reasonably rely on the COI with disclaimer, and TIG failed to present any evidence on several crucial elements of both claims. We affirm on the latter grounds.

A.

The elements of common law fraud are (1) a material misrepresentation; (2) the defendant knew the statement was false or made the statement with reckless disregard for the truth; (3) the defendant intended for the plaintiff to rely upon the statement; and (4) the plaintiff relied upon the statement (5) to his detriment. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990). The district court observed the absence of Sedgwick's fraudulent intent or reckless disregard as an alternate ground of decision. TIG has never presented any evidence that Sedgwick intended to defraud Corporate Express.

TIG presented evidence from List that Sedgwick may have misunderstood Policy 362 to include an additional insured clause. TIG never presented evidence that Sedgwick had the intent to defraud. We do not need to reach the question of reasonable reliance.

B.

The elements of negligent misrepresentation are (1) a representation made by the defendant in course of the defendant's business, or in a transaction in which the defendant has a proprietary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communication the opinion; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). TIG did not offer any summary judgment proof that Sedgwick negligently or carelessly issued the COI. TIG did not advance a theory about the relevant standard of care; it does not cite omitted precautions or any other indicia of negligence; it did not explain why Sedgwick, rather than Corporate Express, bore the burden of reading the incorporated policy. Absent a coherent legal theory and summary judgment evidence, the district court properly dismissed the claim.

AFFIRMED.