United States Court of Appeals
Fifth Circuit

**F I L E D**

February 7, 2007

Charles R. Fulbruge III
Clerk

*In The United States Court Of Appeals*
*For The Fifth Circuit*

No. 05-10800
Summary Calendar

JAMES D. WARD, PhD.

     Plaintiff — Appellant,

     v.

MIDWESTERN STATE UNIVERSITY,

     Defendant — Appellee.

Appeal from the United States District Court
For the Northern District of Texas
No. 7:04-CV-128

Before SMITH, WIENER, and OWEN, Circuit Judges.

PER CURIAM:[*]

     Dr. James D. Ward sued Midwestern State University (MSU), alleging race

discrimination in violation of 42 U.S.C. §§ 1981, 1981a, and 1983, and Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e (Title VII). The district court granted MSU's motion

to dismiss Ward's section 1981, 1981a, and 1983 claims and granted summary judgment for

MSU on Ward's Title VII claims. Ward appeals the grant of summary judgment on his Title

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

VII claims.  We affirm.

## I

MSU offered and Ward, an African-American male, accepted, on a contract basis, the positions of Associate Professor of Public Administration and Coordinator of the Masters in Public Administration program in the College of Health and Human Services.  The associate professor position was a tenure-track position that commenced in September 2001, and Ward was to be considered for tenure "no earlier than 2003 and no later than 2007, provided that [he] meet all other requirements for this consideration."

In December 2001, Dr. Susan Sportsman, Dean of the College of Health and Human Services, asked Ward to step down from the coordinator position without a concomitant reduction in salary.  On October 14, 2002, Ward applied for tenure.  In a letter dated October 15, 2002, Sportsman informed Ward that he would not receive a contract to teach at MSU for the 2003–2004 academic year.  Ward alleges that MSU discriminated against him because of his race by removing him from the coordinator position, denying him tenure, and refusing to renew his teaching contract.

## II

We review a district court's grant of summary judgment *de novo*.[1]  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

---

[1]*Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004).

as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]  An issue as to a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-moving party.[3]  We construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor.[4]  "We may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision."[5]

*McDonnell Douglas Corp. v. Green*[6] and its progeny establish the burden-shifting analysis to be applied to Title VII discrimination claims.  In order to overcome a motion for summary judgment on his Title VII discrimination claims, the plaintiff must first establish a *prima facie* case of discrimination, which entitles him to a presumption of discrimination.[7]  The defendant may rebut this presumption by presenting a legitimate, nondiscriminatory reason for its actions.[8]  Under the traditional *McDonnell Douglas* analysis, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that the defendant's

---

[2]FED. R. CIV. P. 56(c).

[3]*Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4]*Id.*

[5]*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003).

[6]411 U.S. 792 (1973).

[7]*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

[8]*Id.*

proffered reason for its action is pretextual.[9]  In "mixed-motive" cases, this court applies the

"modified-*McDonnell Douglas*" framework.[10]  Under this mixed-motive framework, after

the defendant has presented a legitimate, nondiscriminatory reason, the plaintiff must offer

sufficient evidence to create a genuine issue of material fact that the defendant's reason,

while true, is only one of the reasons for its conduct, and the plaintiff's race is another

"motivating factor" for the defendant's conduct.[11]

"To establish a *prima facie* case, a plaintiff need only make a very minimal

showing."[12]  Therefore, we assume without deciding that Ward established a *prima facie*

case.

Ward asserts that at the second step of the burden-shifting analysis, MSU failed to

present legitimate, nondiscriminatory reasons for its actions.  At this step of the analysis, the

defendant has the burden of production, not persuasion.[13]  "'[T]he employer's burden is

satisfied if he simply explains what he has done or produc[es] evidence of legitimate

---

[9]*Id.*

[10]*Rachid v. Jack In the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-102 (2003).

[11]*Rachid*, 376 F.3d at 312; *see also Desert Palace*, 539 U.S. at 99-102.

[12]*Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

[13]*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

nondiscriminatory reasons.'"[14] This explanation "must be clear and reasonably specific."[15] MSU relied on Sportsman's affidavit. Ward first alleges that the district court erred in considering that affidavit because it was vague, speculative, and conclusory and because MSU failed to attach referenced documents. While Ward did make three hearsay objections to several parts of Sportsman's affidavit, which the district court sustained, Ward never objected to any part of the affidavit on the grounds that it was vague, speculative, or conclusory or that MSU failed to attach referenced materials. Therefore, Ward has waived these objections to the affidavit, and the district court properly considered the portions of the affidavit to which there was no objection.[16]

Sportsman's affidavit states that Ward was removed from the coordinator position and his contract was not renewed based on several incidents. First, Sportsman "observed Dr. Ward standing and shouting at other MPA faculty during an MPA faculty meeting," and Sportsman "intervened, stopped the meeting, and asked Dr. Ward and another professor to join [her] to discuss the situation." In another incident, "Dr. Ward, through an email disbursed to all MPA faculty [in November 2001], chastised a fellow MPA faculty member for the presentation of an MPA candidate." Finally, Sportsman stated that "beginning in the

[14]*Id.* at 256 (quoting *Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2 (1978)) (internal quotations omitted).

[15]*Id.* at 258.

[16]*See Munoz v. Int'l Alliance of Theatrical Stage Employees & Moving Picture Mach. Operators*, 563 F.2d 205, 214 (5th Cir. 1977) ("Inadmissable material that is considered by a district court without challenge may support a summary judgment. Here there was no timely objection and it is deemed waived.").

5

Fall, 2002 semester, Dr. Ward was absent from all College Faculty meetings and the mandatory MPA faculty meetings." Sportsman states that Ward was removed from his position and his contract was not renewed because these incidents demonstrated that Ward lacked the interpersonal skills necessary to serve as coordinator or associate professor. These proffered reasons are clear and reasonably specific, and MSU met its burden of production. MSU, therefore, rebutted the presumption of discrimination.

Under the final step of the burden-shifting analysis, Ward must present sufficient evidence to create a genuine issue of material fact that MSU's proffered reasons are pretextual. The district court determined, under the traditional *McDonnell Douglas* analysis, that Ward failed to raise a genuine issue of material fact that MSU's proffered legitimate, nondiscriminatory reasons were pretextual.

Ward contends that a genuine issue of material fact exists regarding whether MSU's proffered reasons are pretextual. In order to raise a genuine issue of material fact, the non-movant must come forward with "specific facts."[17] "Conclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."[18] Ward alleges that the "purposefully vague and conclusory" statements in Sportsman's affidavit raise an inference that MSU's proffered reasons were pretextual. As determined earlier,

---

[17]FED. R. CIV. P. 56(e); *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

[18]*TIG Ins. Co.*, 276 F.3d at 759.

Sportsman's affidavit contains clear and reasonably specific reasons for MSU's actions; therefore, Ward makes an improbable inference that is insufficient to raise a genuine fact issue for trial.

Next, Ward stresses that he was better qualified than a white colleague who was granted tenure. To support this allegation, Ward submits his own deposition testimony in which he claims to be better qualified and better published than his colleague, but this evidence is mere speculation. Ward fails to refer this court to any particularized evidence to support his subjective view that he was better qualified than his colleague.[19]

Ward also alleges that the facts that there were only four African-American faculty out of approximately 500 MSU faculty members and that another African-American faculty member in the College of Health and Human Services was denied tenure raise a fact issue that MSU's proffered reasons were pretextual. Again, Ward relies on his own speculative deposition testimony to support these allegations, and he fails to present any particularized evidence to support these allegations. We conclude that Ward's evidence is insufficient to raise a genuine issue of material fact as to whether MSU's proffered reasons for its actions was pretext for unlawful discrimination.

Ward also argues that the district court improperly failed to apply the mixed-motive theory to his Title VII claims. This argument, however, falls outside the scope of our

---

[19]*See Ross v. Univ. of Tex. at San Antonio*, 139 F.3d 521, 526-27 (5th Cir. 1998) (holding that the plaintiff's generalized statements about relative qualifications or treatment of similarly situated employees is insufficient to defeat summary judgment); *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (same).

7

appellate review because Ward waived this allegation by failing to present any arguments

related to the mixed-motive analysis in the district court.[20]

We therefore AFFIRM the district court's grant of summary judgment.

[20]*Jones v. Overnite Transp. Co.*, No. 05-20363, 2006 WL 3627148, at *5 n.2 (5th Cir. Dec. 13, 2006) ("A plaintiff must raise his mixed-motive theory in the district court to preserve the argument on appeal.") (per curiam) (citing *Carthon v. Johnson Controls, Inc.*, 100 F. App'x 993, 997 (5th Cir. 2004)); *see also Frank C. Bailey Enters., Inc. v. Cargill, Inc.*, 582 F.2d 333, 334 (5th Cir. 1978) (per curiam) ("[A]n appellate court, in reviewing a summary judgment order, can only consider those matters presented to the district court.").