# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-11114

United States Court of Appeals
Fifth Circuit

**FILED**

June 27, 2019

Lyle W. Cayce
Clerk

TEXAS CAPITAL BANK N.A.,

> Plaintiff - Appellee

v.

DANIEL ZEIDMAN,

> Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-3109

Before CLEMENT, DUNCAN, and OLDHAM, Circuit Judges.

PER CURIAM:*

Daniel Zeidman asserts several affirmative defenses to the breach of a guaranty agreement (the "Guaranty") with Texas Capital Bank (the "Bank"). The Bank misconstrues Zeidman's defenses and wrongly characterizes them as a purported oral modification to the Guaranty, which is covered by the statute of frauds. Finding the Bank's argument unpersuasive and finding that Zeidman has introduced evidence supporting several of his theories, we reverse

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-11114

part of the district court's grant of summary judgment to the Bank and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS

Gallery Homestore, PA, LLC ("Gallery Homestore") secured a $1 million loan from the Bank. Daniel Zeidman and Scott Cooper, co-members of Gallery Homestore, each personally and fully guaranteed the debt by executing separate guarantees.

In 2010, Zeidman and Cooper ended their business relationship, and Cooper continued to operate Gallery Homestore. Zeidman contends that he "had very few communications" with the Bank after that. Yet, over the next six years, the loan was renewed and extended several times. Each time, Zeidman renewed his Guaranty. At the time of the last renewal, the loan's principal balance was approximately $1,318,058. Zeidman executed another Guaranty. In 2011, the parties had added another company, Gallery Internet, LLC ("Gallery Internet"), as a co-borrower. Zeidman was a managing member of Gallery Internet, but states he had no role in its operations. In 2012, Gallery Homestore was released as an obligor.

On August 11, 2016, Kirk Gibson, a Bank agent, emailed Cooper, confirming the current terms of the loan and setting a payment schedule. Two days later, Cooper emailed Zeidman, notifying him that he owed 38% of the debt. Zeidman contends that he and Cooper agreed that each would be responsible for $500,000, and that one of Cooper's companies would be responsible for the remainder. According to Zeidman, he then decided that since he and Cooper were no longer partners, he preferred to pay his share of the debt in a lump sum and obtain a release of his Guaranty from the Bank.

Zeidman emailed Gibson on August 22, 2016 and asked to talk. Zeidman contends that he then called Gibson to arrange a complete release of liability in return for paying 38% ($500,000) of the total remaining balance (then,

No. 18-11114

$1,318,058). Zeidman claims that Gibson agreed to this arrangement. Zeidman then wired the Bank $500,000 through another company he controlled.

In an email addressed to both Zeidman and Cooper on September 1, 2016, Gibson acknowledged receipt of the payment, reduced the loan's principal, and stated the loan's remaining balance. Gibson also recommended further payment options. The email stated:

> With the pay down of $500,000 on the Term Loan on 08/24/16 – the term loan balance is $818,057.62. As originally underwritten, the loan was scheduled to amortize over 48 months with a principal payment of $27,459.53 per month. If we keep the payment amount at the $27k – the loan will pay off in approximately 30 months. We could amortize the $818M over 48 months if you guys would like. Please advise on which direction you would like us to take.

Cooper responded, but Zeidman did not. Neither Zeidman nor Gibson mentioned that Zeidman was released from his Guaranty.

Zeidman claims that, starting in April 2017, the Bank asked him weekly if he knew how they could contact Cooper because the loan was in default. Then, on August 10, 2017, the Bank notified Zeidman that the loan and note were in default and demanded payment from him. Zeidman refused, claiming he had been released from the Guaranty.

The Bank sued Zeidman in Texas state court, alleging breach of the Guaranty. Zeidman removed the case to federal district court under diversity jurisdiction. The Bank moved for summary judgment, and Zeidman responded and filed a cross-motion for summary judgment. Zeidman asserted several affirmative defenses, arguing that he was not liable for the remaining sum because he had agreed with Cooper that he would be responsible for only $500,000.

The district court granted the Bank's motion for summary judgment and denied Zeidman's cross-motion. The district court held summary judgment was

appropriate since Zeidman "failed to produce any evidence of a written modification [as required by the Guaranty] agreed to and signed by the parties." The district court also held that Zeidman failed to produce evidence supporting his defenses. It stated that Zeidman's "subject [sic] belief as to what the payment constituted is insufficient to create a genuine issue of material fact—especially in light of the explicit terms contained in the agreement he executed barring any oral modifications."

## STANDARD OF REVIEW

This court reviews a grant of summary judgment *de novo*. *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the non-moving party, the pleadings and record show no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "In determining whether a case presents triable issues of fact, we, like the district court, may not make credibility determinations or weigh the evidence and we must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 972 (5th Cir. 2014) (*per curiam*) (quotation omitted).

If the moving party initially shows the non-movant's case lacks support, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). To defeat a properly supported motion for summary judgment, "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

One way for a party to support an assertion that a fact "is genuinely disputed" is to cite to "affidavits." FED. R. CIV. P. 56(c). "When a motion for

No. 18-11114

summary judgment is made . . . , an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits . . . must set forth a genuine issue for trial." *Beaufort Concrete Co. v. Atl. States Constr. Co.*, 352 F.2d 460, 463 (5th Cir. 1965).

## DISCUSSION

Zeidman contends that the trial court erred because there were genuine issues of material fact stemming from various defenses to the enforcement of the Guaranty: quasi-estoppel, equitable estoppel, release, and accord and satisfaction. We consider each defense in turn.

### A.   Quasi-Estoppel

First, Zeidman claims he offered summary judgment evidence to establish a quasi-estoppel defense. "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) (citation omitted). But "unlike equitable estoppel, quasi[-]estoppel requires no showing of misrepresentation or detrimental reliance." *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.—Corpus Christi 1994, writ denied).

Zeidman claims that the summary judgment evidence supports his quasi-estoppel defense. Taking, as we must, the factual allegations in Zeidman's affidavit as true, the Bank orally agreed to accept a $500,000 payment in satisfaction of the Guaranty, Zeidman wired that amount to the Bank, the Bank accepted the payment, and it later demanded additional payment under the Guaranty. On its face, this alleged scenario appears to satisfy the elements of quasi-estoppel.

5

No. 18-11114

But the Bank contends that the Guaranty is subject to the statute of frauds. So, says the Bank, Zeidman cannot argue that an alleged oral agreement creates a genuine dispute of material fact as to a modification of the Guaranty. "Parties to a written contract that is within the provisions of the statute of frauds . . . may not by mere oral agreement alter one or more of the terms." *Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex. 1967) (internal quotation marks omitted); *see also Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.,* 470 S.W.3d 636, 647 (Tex. App.—Dallas 2015, no pet.) ("An oral modification of a written contract is enforceable under the statute of frauds only if the modification does not materially alter the obligations imposed by the underlying agreement.").

However, this argument is unavailing because it improperly recharacterizes Zeidman's affirmative defense as a claim that the underlying Guaranty was modified. While it is true that oral modification of the Guaranty appears to be prohibited by the text of the Guaranty and the statute of frauds, the Bank has cited to no case holding or even suggesting that the availability of quasi-estoppel as a defense depends on the existence of a writing.

The Bank also seems to suggest that Zeidman cannot maintain a quasi-estoppel claim because the Bank received no benefit from Zeidman when he wired it $500,000. But this argument represents economic sophistry. Of course, it is true that, in the event of a default on the underlying loan, Zeidman would have been bound under the Guaranty to repay the entire balance due (which at the time of his payment exceeded $500,000). But when Zeidman wired $500,000 to the Bank, the underlying loan was not in default and accordingly Zeidman was under no immediate—or even certain future—obligation to pay the Bank anything. So, it cannot be said that the Bank received no benefit when it allegedly agreed to accept $500,000 now in exchange for giving up the

legal right to hold Zeidman to account for any amounts outstanding should the borrower on the loan default at some point in the future.

Because Zeidman has offered a specific factual account, in an affidavit, which could satisfy the elements of quasi-estoppel, and because the Bank appeals only to the tangentially related doctrine of contract modification, the district court erred in finding that Zeidman did not produce evidence supporting this defense.

### B.    Equitable Estoppel

Zeidman also advances a theory of equitable estoppel.

> The elements of equitable estoppel are: (1) a false representation or concealment of material facts made with the intent that another party act on the false representation or silence, (2) the false representation or concealment of material facts was made by a party with knowledge of the facts, (3) the party to whom the representation was made or from whom facts were concealed was without knowledge or the means of knowledge of the real facts, and (4) detrimental reliance.

*Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd.*, 817 S.W.2d 160, 163 (Tex. App.—Houston [14th Dist.] 1991, no writ).

Zeidman again relies on his affidavit and his payment to the Bank. He claims that the Bank made a false representation to him by orally agreeing to modify their written agreement and concealing the fact it would not release him from his Guaranty. He argues that he made the payment in detrimental reliance on that representation.

The Bank adopts essentially the same argument that it advances in response to Zeidman's quasi-estoppel defense. First, it argues that Zeidman is seeking to modify the underlying Guaranty. Then it argues that Zeidman could not have detrimentally relied on the supposed oral agreement with the Bank because he was already on the hook for the full amount of the debt. But, as explained above, neither of these arguments hold water. The Bank cannot

reformulate Zeidman's defense as a claim of modification and economic reality belies the assertion that each party's position remained unchanged upon completion of the wire transfer. Because the Bank has offered no plausible theory undermining Zeidman's factually supported claim of equitable estoppel, the district court erred in finding that Zeidman did not produce evidence supporting this defense.

C.    Release

Zeidman next argues that he offered evidence supporting a release defense. "A release is an agreement or contract in which one party agrees that a legal right or obligation owed by the other party is surrendered." *D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 226 (Tex. App.—Fort Worth 2013, no pet.). "A release extinguishes a claim or cause of action and is an absolute bar to any right of action on the released matter." *Id.* "Because a release is essentially a contract, a defendant must prove the elements of a contract to establish the affirmative defense of release of liability." *Reytec Constr. Res., Inc. v. Baptist Hosps. of Se. Texas*, No. 09-15-00085-CV, 2016 WL 6900874, at *8 (Tex. App.—Beaumont Nov. 23, 2016, no pet.) (citing *Vera v. North Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex. App.—San Antonio 1998, no pet.)).

Zeidman claims that "[a] guaranty may be orally released" and that Gibson agreed on behalf of the Bank to release him from his Guaranty. For this proposition, he cites *Dicker v. Lomas & Nettleton Fin. Corp.*, 576 S.W.2d 672 (Tex. Civ. App.—Texarkana 1978, writ ref'd n.r.e.). In *Dicker*, the court held that where a lender continually advised the guarantor that he would not sue for deficiency if the guarantor attempted to find a buyer, the guarantor's affidavit was "sufficient to raise a fact question as to whether or not the parties' agreement and subsequent conduct thereunder was sufficient to prevent the operation of the Statute of Frauds." *Id.* at 675.

No. 18-11114

Again, in response, the Bank cites to unhelpful and inapposite caselaw dealing with general claims of contract modification rather than the particular affirmative defense of release. Indeed, while contracts subject to the statute of frauds may not generally be modified orally, "an exception to the rule exists where the party relying on the oral agreement has performed his undertaking thereunder so that a refusal to enforce the modified agreement would result in wrong to him." *McCreless Shopping Vill., Inc. v. Burton*, 352 S.W.2d 802, 803 (Tex. Civ. App.—San Antonio 1961, writ ref'd n.r.e.). And here, construing the facts in Zeidman's favor, there exists an oral release agreement under which he performed, and the Bank reaped a benefit. The district court erred in finding that Zeidman did not produce evidence supporting this defense.

D.     Accord and Satisfaction

Finally, Zeidman contends that he offered summary judgment evidence to establish an accord and satisfaction defense. "Accord and satisfaction is a defense that rests upon a new contract, express or implied, in which the parties agree to the discharge of an existing obligation in a manner otherwise than originally agreed." *Melendez v. Padilla*, 304 S.W.3d 850, 852 (Tex. App.—El Paso 2010, no pet.). "The accord is merely a new agreement whereby one party agrees to give or perform, and the other to accept something other than or different from what she is, or considers herself to be, entitled to. Satisfaction is then the performance of the agreement." *Id.* at 852–53 (citation omitted). "[F]or this defense to prevail, there must be a dispute and an unmistakable communication to the creditor that tender of the reduced sum is upon the condition that acceptance will satisfy the underlying obligation." *Lopez*, 22 S.W.3d at 863. Additionally, "[t]he parties must specifically and intentionally agree to the discharge of one of the parties' existing obligations." *Id.*

Once again, Zeidman argues that his affidavit provides evidence that he reached an oral agreement with the Bank about his Guaranty. He claims that

9

No. 18-11114

this oral agreement constituted an accord of his obligation and his payment constitutes satisfaction. He contends that the evidence of the oral agreement (his affidavit) "creates a genuine issue of material fact on the meeting of the minds over those simple terms and the parties' consent to them." Zeidman contends that the Bank orally agreed to the arrangement and accepted the payment although it was initially entitled to a different arrangement—full guaranty.

However, Zeidman offers no evidence to support at least one element of this defense—a dispute.[1] For the defense of accord and satisfaction "to prevail, there must be a dispute" as to the terms of the underlying agreement. *Id.* Because there is no evidence of such a dispute, we affirm the district court's decision to grant summary judgment to the Bank on this issue.

## CONCLUSION

For the foregoing reasons we REVERSE and REMAND in part and AFFIRM in part.

---

[1] We express no view as to whether he might have satisfied the others.

10